[Civ. No. 12581.   First Dist., Div. One.   Feb. 6, 1945.]

WALTER K. OLDS, as Executor, etc., Respondent, v. GENERAL ACCIDENT FIRE & LIFE ASSURANCE CORPORATION, LTD. (a Corporation), Appellant.

Myrick & Deering and Scott, James Walter Scott and James Walter Scott, Jr., for Appellant.

Jerome L. Schiller for Respondent.

PETERS, P. J.—On November 3, 1932, the appellant company issued an automobile liability policy to Helmut Hardt covering a specified automobile. On October 23, 1933, Hardt, while driving the automobile in question, injured William Kingston. In March of 1934 Kingston sued Hardt for the injuries so received. In that action Hardt was defended by appellant company pursuant to the terms of the policy. In June of 1935 Kingston secured a judgment against Hardt for $7,500 and costs. The insurance company appealed, and the judgment was affirmed. (*Kingston* v. *Hardt,* 18 Cal.App.2d 61 [62 P.2d 1376].) The judgment became final February 10, 1937. Prior to the date of the final judgment, and on October 18, 1936, Kingston died. Sometime after the date of the final judgment Hardt left this country. On January 10, 1938, the respondent, Walter K. Olds, was appointed executor of the last will and testament of Kingston. On March 8, 1938, one year and twenty-six days after the date of the final judgment, this action was commenced against appellant insurance company as insurer of Hardt. The main question presented on this appeal is whether this action is barred by a provision in the insurance policy requiring actions to recover

losses thereunder to be brought within twelve months of the date of the final judgment against the assured. The trial court held that the provision in question was not applicable to actions brought by the injured third party, and gave judgment against the company for the face amount of the policy. From this judgment the insurance company appeals.

The policy in question is the usual automobile liability policy. Under the heading "Provisions" there are eleven express conditions lettered A through K. Provision A fixes the limits of the financial responsibility of the company; Provision B refers to "Additional Assureds"; Provision C contains certain "Exclusions"; Provision D deals with the duty of the assured to notify the company of accidents and to cooperate with the company in the defense of actions brought against the assured. Provision E is the one directly involved. It reads:

"E. Right of Action. No action shall lie against the Corporation to recover for any loss under this policy, unless it shall be brought after the amount of such loss shall have been fixed or rendered certain by final judgment against the Assured after trial of the issue. In no event shall any such action lie unless brought within Twelve months after the right of action accrues as herein provided, except, however, in the event that any statutory provision provides for a definite minimum period, then the statutory minimum provision shall govern, irrespective of Provision I of this policy.

"Bankruptcy or Insolvency of Assured. The Corporation is bound to the extent of its liability under this policy to pay and satisfy and protect the Assured against the levy of execution upon any final judgment that may be recovered upon any claim covered by this policy as in the policy set forth and limited and an action may be maintained upon such judgment by the injured person or persons or such other party or parties in whom the right of action vests to enforce such liability of the Corporation as in the policy set forth and limited."

This last sentence is one of the few places in the policy where the rights of injured third persons are specifically referred to.

Provision F provides that if the company pays any loss under the policy, the company shall be subrogated to the rights of the assured to the extent of such payment. Provision G refers to the effect of the assured carrying other insurance, while Provision H provides how the policy may be canceled.

Provision I, specifically referred to in Provision E above quoted, reads as follows:

"I. Statutory Provision. If any of the provisions or conditions of this policy shall conflict with or are inconsistent with the law of the State where this contract is entered into, then such provisions and conditions shall be inoperative in such State and the State law shall prevail."

Provision J deals with waivers, while Provision K provides that the declarations of the assured are made a part of the policy and warranted by the assured to be true.

In addition to the provisions of the policy there is a statutory provision that must be considered in determining the proper solution of the problem here involved. Prior to 1919, injured third persons had no rights at all against the insurance company writing the policy covering the tort feasor. In that year the Legislature enacted a statute giving the injured third person certain definite rights against the insurance company writing the policy carried by the negligent tort feasor. (Stats. 1919, ch. 367, p. 776.) This statute was in effect in 1932 when the present policy was written, and in 1933 when the accident occurred. So far as pertinent here it provides: "No policy of insurance against loss or damage resulting from accident to, or injury suffered by another person and for which the person insured is liable . . . shall be issued or delivered to any person in this state by any domestic or foreign insurance company, authorized to do business in this state, unless there shall be contained within such policy a provision that the insolvency or bankruptcy of the person insured shall not release the insurance carrier from the payment of damages for injury sustained or loss occasioned during the life of such policy and stating that in case judgment shall be secured against the insured in an action brought by the injured person or his heirs or personal representatives, in case death resulted from the accident, then an action may be brought against the company, on the policy and subject to its terms and limitations, by such injured person, his heirs or personal representatives as the case may be, to recover on said judgment. Upon any proceeding supplementary to execution, the judgment debtor may be required to exhibit any policy carried by him insuring against the loss or damage for which judgment shall have been obtained." In 1935 (Stats. 1935, ch. 145, p. 496) the provisions of this statute were embodied substantially into the Insurance Code (Stats. of 1935 at p.

716), and are now to be found in sections 11580 and 11581 of that code.

The specific problem we are here concerned with is whether Provision E, above quoted, operates so as to bar an action brought by the injured third person more than one year after such person secures a final judgment against the assured. In reality this presents two separate problems, the first, whether Provision E, properly interpreted, applies to actions by the injured third person; the second, if it does, then does such provision violate the statute of 1919 above quoted?

■ We have no doubt that provisions in a contract shortening the normal statute of limitations are valid between the parties, if reasonable, and that one year is not, as between the contracting parties, an unfair period of limitation. (*Fageol T. & C. Co.* v. *Pacific Indemnity Co.*, 18 Cal.2d 748 [117 P.2d 669]; *Tebbets* v. *Fidelity & Casualty Co.*, 155 Cal. 137 [99 P. 501]; *Beeson* v. *Schloss*, 183 Cal. 618 [192 P. 292].) We therefore start the discussion of both questions above referred to with the assumption that had Hardt paid this judgment his action against the company to recover his loss, under Provision E, would have been barred after one year from the date of the final judgment in the action of *Kingston* v. *Hardt*. That assumption, however, is not necessarily conclusive on the questions as to whether Provision E was intended to apply to actions by the injured third person against the insurance company, or whether the assured or the insurance company can contract legally to reduce the statutory right given the injured third person by the 1919 statute.

■ Before discussing either the question of interpretation or the question of legality, the fundamental purpose of statutory or contractual limitation provisions must be kept in mind. In the recent case of *Order of R. Telegraphers* v. *Railway Exp. Agency* (1944), 321 U.S. 342 [64 S.Ct. 582, 88 L.Ed. 788], it is stated: ''Statutes of limitation, like the equitable doctrine of laches, in their conclusive effects are designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute

them." In determining whether Provision E bars the injured third person from asserting his statutory conferred right, the above mentioned fundamental policy must be kept in mind. In the instant case the insurance company knew of the claim and defended against it. It had full knowledge of the rendition of the judgment against Hardt and appealed from it. It has received the premium to cover this particular risk. To enforce the short contractual period of limitations against the injured third person, who had no freedom of contract, would not be within the policy or spirit above set forth. ■ As Mr. Justice Traynor aptly stated in considering a somewhat similar problem: "While courts are diligent to protect insurance companies from fraudulent claims and to enforce all regulations necessary to their protection, it must not be forgotten that the primary function of insurance is to insure. When claims are honestly made care should be taken to prevent technical forfeitures such as would ensue from an unreasonable enforcement of a rule of procedure unrelated to the merits." (*Bollinger* v. *National Fire Ins. Co.*, 25 Cal.2d 399, 405 [154 P.2d 399].)

■ ▪ We turn first to the question of interpretation involved. It will be noted that the insurance policy is between Hardt and the company, its primary purpose being to insure Hardt against liability in the event he injures a third person. The provisions A through K, for the most part, are obviously intended to govern the respective rights of the contracting parties. Whenever the rights of third persons are affected, that fact is specifically noted. Thus the second paragraph of Provision E above quoted expressly confers upon "the injured person or persons" a right to maintain an action under certain circumstances against the company. There is nothing said in that paragraph that such action must be brought within one year from the date of the final judgment against the assured. To arrive at that interpretation there must be read into the second paragraph of Provision E, the first paragraph of that provision. The exact words used in that first paragraph seem to exclude the thought that they were intended to apply to actions by third persons. The pertinent words are "No action . . . to recover for any loss under this policy" shall be brought against the company, etc. The words "recover" and "loss under this policy," in their normal connotation, would seem to refer to actions by the assured after he has paid the judgment. The injured third person does not

suffer a "loss under this policy" nor is his action to "recover" such loss. He has suffered injuries as the result of the negligence of the assured. He has a final judgment against the assured. The only reason he can sue the insurance company on that judgment is by reason of the 1919 statute, and the provision of the policy inserted pursuant thereto, to the effect that the injured person may maintain an action "upon such judgment." That does not appear to be an action to recover a "loss" under the policy. The word "recover" adds further weight to the thought that the first paragraph of Provision E only applies to actions brought by the assured after he has paid a judgment against him. Such an action is obviously to "recover" for a "loss under this policy." But an action by the injured third person is not to "recover" a loss under the policy, but an action to be reimbursed for damages suffered, the amount thereof having been fixed by final judgment. According to Webster's New International Dictionary (2d ed.), the primary meanings of the word "recover" are: "To get or obtain again; to get renewed possession of; to win back; to regain, as lost property, territory, appetite, health, courage." Manifestly, a person who has been injured does not fall within such definition—he does not get back or regain a loss under the policy. It would appear that, if the words of the first paragraph of Provision E be given their normal meaning, and keeping in mind the elementary rule that ambiguous provisions of an insurance policy should be construed against the insurance company, but one intent has been expressed by that provision, namely, that Provision E was intended as a limitation upon the right of Hardt, the assured, to recover for any loss he might suffer that was covered by the policy, and was not intended as a limitation on the rights of the injured third person given him by the statute of 1919 to sue the company on his judgment.

This interpretation is fortified by Provision I which provides that if the provisions of the policy shall "conflict with or are inconsistent with the law of the State . . . then such provisions and conditions shall be inoperative . . . and the State law shall prevail." When the statute of 1919 created the cause of action in favor of the injured party against the insurance company, the state statute of limitations was of course impliedly a part thereof. If a statutory liability was thus created the period of limitations would be three years

(Code Civ. Proc., § 338) ; if the action is upon an agreement in writing, on the theory that the injured person is a third party beneficiary, the period would be four years (Code Civ. Proc., § 337) ; while if the action is upon a judgment, the period would be five years (Code Civ. Proc., § 336). Obviously, a one-year contract provision is inconsistent with these statutory periods, and under the terms of the policy should give way thereto.

This difference in treatment between an action by the assured to recover a judgment paid by him, and an action by the injured third person to recover on his judgment, is based on logical differences in the relationships involved. When the assured is sued and a judgment secured against him, which he pays, he knows that he has suffered a loss and that he is insured against that loss. But when the injured third person sues the tort feasor he does not know, and has no legal way of knowing, whether the tort feasor is insured, or even if he does learn of that fact, he does not necessarily know with what company, or what the terms of the policy may be. He can learn these facts, legally, only after securing a final judgment against the tort feasor in proceedings supplementary to execution. Where, as in the instant case, the judgment debtor has not only left the state but also the United States, it would be practically impossible, legally, to ascertain the facts within the twelve-month period. For this reason, while it is quite reasonable for the assured to be limited by the contract to one year after final judgment to bring his action, it would be quite unreasonable to limit the injured third person to that period. Thus the interpretation above suggested is not only in accord with the literal meaning of the actual words used in the policy, but is based on reasonable grounds of distinction in the rights of the two classes of persons.

Independent of the question of interpretation, and assuming that Provision E was intended to apply to actions on judgments brought by injured third persons, it is our opinion that any attempt by the assured and the company to limit the rights conferred on such third persons by the 1919 statute is invalid. The 1919 statute has been before the courts of this state for interpretation many times since it was passed. That statute, it will be remembered, conferred upon the injured third person the right to sue the company insuring the tort feasor, after first securing a final judgment against the

tort feasor, regardless of the bankruptcy or insolvency of the tort feasor, but subject to the "terms and limitations" of the policy. The question that has been presented in most of the cases is what "terms and limitations" of the policy are applicable to the injured third person. ▋ It is now well settled that the cause of action created by the statute is not absolute, and that if the insurance company could defend against the assured on the ground that the policy did not cover the loss it may defend on the same ground against the injured third person. Thus, if the assured has made false representations in his application for the insurance, if the automobile is being used in violation of the terms of the policy, if an unlicensed person is operating the car, if the car is being used for an illegal purpose, if the assured fails to give reasonable notice of the accident or fails to cooperate with the insurance company in the defense of the action—in all such cases the insurance company may defend the action brought by the injured third person on these grounds. (*Hynding* v. *Home Acc. Ins. Co.*, 214 Cal. 743 [7 P.2d 999, 85 A.L.R. 13]; *Western M. Co.* v. *Bankers I. Ins. Co.*, 10 Cal.2d 488 [75 P.2d 609]; *Purefoy* v. *Pacific Automobile Indem. Exch.*, 5 Cal.2d 81 [53 P.2d 155]; *Valladao* v. *Fireman's Fund Indem. Co.*, 13 Cal.2d 322 [89 P.2d 643]; *Sears* v. *Illinois Indemnity Co.*, 121 Cal.App. 211 [9 P.2d 245].) These cases all establish the proposition that, as to such defenses, the injured third person stands in the shoes of the insured tort feasor, that he gets no greater rights than the tort feasor would have had had he paid the judgment and was bringing the action, and that, if the tort feasor could not recover, neither can the injured third person. In this sense the insured third person gets his statutory right subject to the "terms and limitations" of the policy. In such a case it is proper to deny relief to the injured third person because if any of the defenses above enumerated exist, the third person is not covered by the policy. It would be unfair to impose on the insurance company a risk it did not assume, and for which it received no premium.

▋ Concurrently with the above cited cases there have been a series of cases where the courts were dealing with an entirely different kind of defense on the part of insurance companies—a defense that arose after the cause of action had come into existence in favor of the injured third person—that is, after a final judgment had been secured against the

insured tort feasor. Insurance companies have attempted by contractual provisions between themselves and the assured to limit the statutory right created by the 1919 statute. Quite uniformly, and quite properly, the courts have held that defenses based on such provisions are ineffective to defeat the cause of action created by the statute.

Thus the insurance companies attempted to insert in their policies a provision that the return of execution unsatisfied was a condition precedent to the bringing of the action by the injured third person. This was the situation in *Malmgren* v. *Southwestern A. Ins. Co.*, 201 Cal. 29 [255 P. 512]. The court held that such provision was an unlawful limitation on the right created by the statute, and for that reason unavailable as a defense. In this connection the court stated (p. 33) : "The substantive law of this state cannot be enlarged, circumvented, defeated, or modified by any provision which the insurer may have elected to place in its contract in derogation of or in conflict therewith. The statute is founded upon principles of public policy and an anomalous situation would be created if the rights of third parties, for whose protection the law was adopted, could be hindered, delayed, or defeated by the private agreements of two of the parties to a triparty contract. If appellant's contention be sound, then it could, with equal justification, require the question of the assured's bankruptcy to be adjudicated by a competent tribunal before it would be obliged to recognize his insolvency or bankruptcy, or impose other conditions precedent to the injured person's right of action in derogation of express provisions of the law's mandate. We see no merit in the contention. . . . The clause in the statute which provides that an 'action may be brought against the company, on the policy and subject to its terms and limitations, by such injured person' was not intended to defeat its purpose upon the theory that an action brought 'on the policy' binds the injured person to a repudiation or waiver of the benefits of the statute expressly adopted for his protection, but it clearly has reference to those matters concerning which the insurer and assured could legally contract." The above language was quoted with approval in *Hynding* v. *Home Acc. Ins. Co.*, 214 Cal. 743, 747 [7 P.2d 999, 85 A.L.R. 13], where the court stated: "We are satisfied that the position taken by us in this decision [the Malmgren case] is sound and reasonable. . . ." At page 752 the court stated: "The proviso that the action is subject to the terms and limitations

of the policy, if it means anything, means that the right of action is not absolute, but that there are some defenses available to the company. Of course, no defense can be set up which defeats the statutory object. . . .'' The same rule has been applied in other cases, and in others the Malmgren case has been cited with approval. (*Marple* v. *American Automobile Ins. Co.*, 82 Cal.App. 137 [255 P. 260] ; *Pigg* v. *International Indemnity Co.*, 86 Cal.App. 671 [261 P. 486] ; *Bryson* v. *International Indemnity Co.*, 88 Cal.App. 100 [262 P. 790] ; *Bias* v. *Ohio Farmers Indemnity Co.*, 28 Cal.App.2d 14 [81 P.2d 1057] ; *National etc. Co.* v. *Industrial Acc. Com.*, 29 Cal. App.2d 336 [84 P.2d 201] ; *Van DerHoof* v. *Chambon*, 121 Cal.App. 118 [8 P.2d 925].) In the Pigg case, *supra*, the court expressly held that if the terms of the 1919 statute and the terms of the policy conflict, the terms of the statute control. In the Bias case, *supra* (p. 16), this court interpreted the Malmgren and Hynding cases, *supra*, as holding: ''that the effect of the statute above referred to . . . is to create a contractual relationship which inures to the benefit of any person who might be negligently injured by the insured, as completely as if such injured person had been specifically named'' therein. In the National etc. Co. case, *supra*, it was held that the statutory provisions prevail even if contrary to the terms of the policy. In the Van DerHoof case, at p. 130, the court interpreted the Malmgren case as holding ''that the statute creates a contractual relation in every indemnity insurance policy which inures to the benefit of any person who might be negligently injured by the assured. Then what was actually held in that case was that when a person had complied with the statute of 1919, *supra*, and obtained a judgment against the assured who was negligent, that he had a right to sue the insurance carrier and that the requirements of the the statute could not be defeated by some requirement in the policy contrary to the statute or not provided for by the statute.''

Of course, after an accident has occurred, the insured and the company cannot enter into an agreement to cancel the policy so as to cut off the rights of the injured person. (*Bachman* v. *Independence Indemnity Co.*, 112 Cal.App. 465, 485 [297 P. 110, 298 P. 57] ; *Finkelberg* v. *Continental Casualty Co.*, 126 Wash. 543 [219 P. 12].)

Now what is to be gathered from these various cases? As I

read the cases the courts of this state have thoroughly settled the following three basic propositions:

First: The statute of 1919 conferred upon injured third persons the right to sue the insurance company on the policy after first securing a final judgment against the tort feasor. This right, in legal effect, subject to the condition precedent of securing a final judgment, makes the injured third person a third party beneficiary of the policy.

Second: This statutory right is subject to the ''terms and limitations'' of the policy, which means that if at the time the injured third party secures his final judgment, because of some act of the assured, such as his fraud, failure to give notice or to cooperate, etc., the policy does not cover that accident, the injured third person has no greater rights than the assured, and cannot recover.

Third: But if at the date the final judgment is secured the policy is in effect and the loss covered, the assured and the company cannot by policy provision in any way limit or place conditions upon the unconditional right of the injured third person to bring his action against the insurance company granted to him by the 1919 statute. Once the right of the injured third person attaches, the assured and the company cannot by policy provision adversely limit or place conditions on the exercise of that right.

Now how do these rules apply to the instant case? On February 10, 1937, the judgment against Hardt became final. On that date Hardt's policy was in full force and effect. On that date the respondent could have sued the insurance company and it would have had no defense. On that date respondent's rights under the 1919 statute and under the terms of the last paragraph of Provision E inserted pursuant to the statute attached. What was the right conferred by the statute? If the statute alone governs, it was the right to sue the company on the judgment within a period of three, four or five years, depending upon which statute of limitations is applicable. But, if appellant is correct in its interpretation of Provision E, Hardt and appellant have contracted that this statutory right must be enforced within one year. In other words, the insurance company is contending that by contract with Hardt it could lawfully reduce this statutory right of respondent good, under the statute for at least three years, to a much smaller right, namely, a right which must be en-

forced in one year. This falls directly within the prohibition of the Malmgren and other cases cited, *supra*. The injured third person has no freedom of contract as did Hardt. His right is given to him and limited by the statute. It would be most unfair and inequitable if the company and the assured could reduce, limit or circumvent that right by attaching limiting conditions to its exercise. If the company can provide the right must be exercised within one year, it can provide other limitations and conditions on the exercise of that right. Yet the Malmgren and other cases cited, *supra,* correctly held that this could not be done.

Both parties cite cases from other states where this question has been considered. The cases from other states are in hopeless conflict. Some hold that such contractual provisions are binding on the injured third person, while others hold that they are not. Some of them turn upon the wording of particular statutes or policies. No useful purpose would be served by citing or discussing these cases. We think the cases decided in this state interpreting the 1919 statute are conclusive on the question, and that under those cases the company and assured are powerless to contract so as to limit or restrict the right of the third person granted by the 1919 statute. For that reason it is our opinion that if Provision E be interpreted so as to apply to actions instituted by the injured third person, such provision would be invalid as in violation of the statute.

This determination of this question makes it unnecessary to consider respondent's further contention that by a so-called financial responsibility rider attached to the policy the liability of the company became absolute regardless of Provision E.

Appellant makes another contention. It urges that respondent had no legal right to bring this action because, so it contends, Kingston had assigned the judgment to one Vernon Stewart on October 6, 1936. It contends that respondent had no right to bring the action either because it had been so assigned, or if it had been reassigned to respondent, then it urges that the statutory cause of action is not assignable, and that the assignment of the judgment automatically extinguished its liability.

The trial court found that on October 6, 1936, Kingston signed a document which by its terms assigned to Stewart for a recited consideration of $200, all of Kingston's right,

title and interest in and to the judgment. The court also found, however, "That prior to the commencement of this action the said Vernon Stewart did execute to the plaintiff herein a release of any and all claims to the said judgment or any part thereof, and did waive any right to participate in the proceeds of the aforesaid judgment and did reassign to the plaintiff herein any right, title or interest the said Vernon Stewart may have acquired by reason of the document" above referred to. The court therefore found that respondent, as executor of Kingston's estate, was, "at the time of the commencement of this action and now is the owner and holder of said judgment."

The record amply supports these findings. Prior to the commencement of this action Stewart signed a comprehensive release by which he released to Kingston and to his estate all claims he might have, past, present or future. This document did not specifically refer to the Hardt judgment, but it is broad enough to include it if the parties so intended. Appellant, however, urges that it did not reassign to Kingston or to his estate any rights acquired under the assignment.

That the release was apparently intended to include the judgment is shown by the following facts: The complaint was filed by respondent on March 8, 1938. In that complaint Stewart was joined as a defendant. The complaint alleges: "That prior to the death of said William Kingston, the said William Kingston executed a purported assignment of said judgment or an interest therein aforementioned to the defendant Vernon Stewart. That prior to the commencement of this action said Vernon Stewart did execute to the plaintiff herein a release of any and all claims to said judgment or any part thereof and did reassign to plaintiff herein any right, title, or interest he may have acquired by reason of said assignment aforementioned."

It is thus obvious that respondent, as executor of Kingston's estate, on the date the complaint was filed, claimed to be the owner of the judgment, was challenging the validity of the purported assignment, and was urging that the release by Stewart had acted as a reassignment to Kingston's estate of any rights Stewart might have in the judgment.

Stewart filed no answer. On the second day of the trial, which took place in June of 1939, Stewart assigned to respondent his right, title and interest in the judgment. In addition,

Stewart's counsel appeared at the trial and waived any interest Stewart might have in the judgment.

Appellant argues that under these facts respondent's rights in the judgment did not accrue until the reassignment by Stewart in June of 1939, and that therefore when the action was filed respondent had no interest in the judgment. Appellant urges that respondent should have filed a supplemental complaint after the reassignment and that to fail to do so was prejudicial error.

The point is technical, and without merit. It is quite apparent that respondent when he filed the complaint claimed to own the judgment and joined Stewart as one who had asserted a claim to it. Stewart promptly renounced any claim to the judgment. The fact that such renunciation took the form of a ''reassignment'' and waiver, does not, as a matter of law, determine that respondent's rights in the judgment accrued on that date. Respondent fully and fairly disclosed in his complaint that he and another were claiming rights in the judgment. One of the claimants admitted he had no rights. The insurance company's only interest is not to have to pay the judgment twice. It is fully protected against that contingency. To decree a forfeiture of respondent's rights because he accepted a ''reassignment,'' without having his claimed existing rights litigated would be inequitable and unfair and would directly violate the reasoning and holding in *Bollinger* v. *National Fire Ins. Co.*, 25 Cal.2d 399 [154 P.2d 399]. The point is without merit.

Appellant also urges that since Kingston assigned the judgment to Stewart, at that moment the rights of either Stewart or Kingston against the insurance company were cut off because the statute of 1919 gives no right to assignees to maintain an action on the judgment against the insurer. Aside from the fact that the record is susceptible of the interpretation that respondent was challenging the validity of that assignment and at no time has conceded its validity, and assuming there was an assignment to Stewart and a reassignment to respondent by the so-called release, respondent as assignee may maintain the action. This court has heretofore considered this very point, and in *Bias* v. *Ohio Farmers Indemnity Co.*, 28 Cal.App.2d 14 [81 P.2d 1057], it held that the rights acquired by the injured third person under the 1919 statute are assignable, and that such assignee may main-

tain the action. Whatever may be the rule in other states under their particular statutes, in this state the assignee of the judgment may maintain the action against the insurance company.

It is also well settled in this state that the personal representative of the deceased judgment creditor may maintain the action. (*Pigg* v. *International Indemnity Co.*, 86 Cal.App. 671 [261 P. 486]; *Bryson* v. *International Indemnity Co.*, 88 Cal.App. 100 [262 P. 790].)

The judgment appealed from is affirmed.

Knight, J., and Ward, J., concurred.

A petition for a rehearing was denied March 8, 1945, and appellant's petition for a hearing by the Supreme Court was denied April 4, 1945.