PRINCE GEORGE'S COUNTY, MARYLAND *v.*
BAHRAM BAHRAMI

[No. 83, September Term, 1976.]

*Decided November 10, 1976.*

The cause was argued before GILBERT, C. J., and MENCHINE and LISS, JJ.

*David S. Bliden, Associate County Attorney,* with whom were *James C. Chapin, County Attorney, Ellis J. Koch, Deputy County Attorney,* on the brief, for appellant.

*Jess Joseph Smith, Jr.,* for appellee.

MENCHINE, J., delivered the opinion of the Court.

On July 25, *1969,* Bahram Bahrami (Bahrami or appellee) applied to the District Council for the Maryland-Washington Regional District in Prince George's County, Maryland (District Council) [1] for the rezoning of 0.97 acres of land on the northwest side of St. Barnabas Road. On April 30, *1975,* the District Council, acting after a granted motion for reconsideration of a previously granted conditional re-classification, denied the application for rezoning. Events occurring before the District Council in the intervening years were the causes of the timely and successful appeal by Bahrami to the Circuit Court for Prince George's County. The trial court's reversal had the effect of restoring a prior order of the District Council that had granted conditional rezoning. Prince George's County, Maryland (County) now has appealed to this Court.

County and Bahrami both question, for widely differing reasons, the issues that are available to the litigants in the appeal from the District Council's order of April 30, 1975.

County contends that "the appellee should have taken action to terminate the reconsideration process in 1971. He

---

1. The application for rezoning from a residential to a commercial classification was filed prior to adoption of the charter form of government in Prince George's County. Under the charter, the "County Council sitting as the District Council" succeeded to the rezoning powers previously vested in the former District Council. The organizational change has no bearing upon the issues now before this Court.

cannot now come before the court and attack the reconsideration. An appeal [to the circuit court] could only be taken from the subsequent decision of the District Council denying the requested rezoning, and not from the Council's original action granting the petition for reconsideration."

Alternatively, the County contends that the trial court's restoration of the prior order of the District Council that had granted the requested rezoning with conditions, was erroneous. County argues that the trial court's action resulted from a misinterpretation of the zoning ordinance's time limitation upon the District Council's exercise of the right to reconsider. Otherwise stated, County also is contending: (1) that the motion for reconsideration, filed on March 4, 1971, was timely; (2) that the District Council's action on April 8, 1971, in voting to reconsider its prior grant of the zoning reclassification to the subject property was a lawful and timely exercise of the authority conferred by the zoning ordinance; and (3) that the trial court's restoration of the District Council's previously granted conditional reclassification was erroneous.

Bahrami contends that the petition filed on March 4, 1971, seeking reconsideration by the District Council of its prior order granting conditional reclassification, was without legal effect: (1) because of the alleged failure to serve the same upon two individuals claimed to have been parties to the original hearing; (2) because it lacked a required affidavit; and (3) because it was not acted upon within the time prescribed by law.

We reject, as did the trial court, County's first contention that Bahrami could not in 1975 appeal from the 1971 reconsideration order of the District Council. In *Kay Constr. Co. v. County Council*, 227 Md. 479, 177 A. 2d 694 (1962), it was said at 489-90 [700]:

"Moreover, this Court has construed statutory provisions for appeal from decisions of administrative agencies as applicable only to orders that are final in nature, and not to preliminary

procedural or interlocutory orders. *Celanese Corp. v. Bartlett,* 200 Md. 397, 90 A. 2d 208 (1952); *Bogley v. Barber,* 194 Md. 632, 72 A. 2d 17 (1950). The resolution of the County Council granting reconsideration was not an order final in nature from which an appeal could be taken. Appellant was thus entitled, upon appeal from the subsequent unfavorable decision of the Council after the rehearing, to a review of the legality of the reconsideration."

We reject the first two contentions of Bahrami because: as to (1) the individuals allegedly unserved with a copy of the petition for reconsideration are not shown by the record to have been parties to the cause in the original hearing before the District Council, and as to (2) the petition for reconsideration recites compliance with the provisions of the ordinance and bears the signature and seal of a notary public, plainly implying that the document was under oath as required thereby.

In our view, the basic question on appeal is:

Was the motion for reconsideration of the grant of reclassification with conditions acted upon within the time prescribed by ordinance?

If the answer to that question is "No," then the reconsideration action of the District Council was a nullity and the decision of the trial court restoring the prior order granting reclassification with conditions must be affirmed. If the answer to that question is "Yes," then the action taken by the District Council to reconsider was validly made and the decision of the trial court to the contrary must be reversed. In the latter case the cause must be remanded for determination whether the final action by the District Council in denying reclassification was reasonably debatable.

What we conceive to be the pertinent parts of the Prince George's Zoning Ordinance, bearing upon or controlling our decision in the subject case, are these:

"30.4 *District council action on proposed amendment.*

No action shall be required by the district council on any proposed zoning map amendment at the time of public hearing. The district council shall announce its decision granting, denying, modifying, or deferring the proposed zoning map amendment within thirty (30) days of the date of public hearing. Deferred applications, upon which no decision is rendered within ninety (90) days of the date of deferral, shall be considered denied.

30.41 REVISORY POWER OF DISTRICT COUNCIL.

(a) For a period of thirty (30) days after the date of mailing the notice of the action or final decision of the district council on any application for a zoning map amendment, or thereafter pursuant to a petition for reconsideration filed within such thirty (30) day period, the district council shall have revisory power and control over such action or final decision. After the expiration of such period the action or decision shall stand and be the final determination as to all matters considered under the application and no revisions thereof may be made except to correct mistakes or irregularities not amounting to a change of use permitted in the zoning expressed in the decision.

(b) Reconsideration. The district council may, pursuant to a petition for reconsideration or upon its own motion, filed or acted upon within the time set forth in subparagraph (a) of this subsection, reconsider the application on such grounds as may be stated in the petition or motion. The petition, in addition to

setting forth grounds for reconsideration, shall have contained therein an affidavit that the same is not filed for the purpose of extending the time of appeal of the action or decision, that there is good and sufficient reason to support the petition and that a copy of it has been served by regular mail, postage prepaid, upon each party who appeared at the public hearing or his spokesman or counsel. An opportunity will be given to the parties named in the record of the public hearing to be heard or to file a response if any member of the district council requests it before the petition or motion is acted on. The district council may act upon the petition for reconsideration with or without a hearing and shall act upon such petition or its own motion within sixty (60) days of the original decision or the same shall be deemed to be affirmed.

### 30.5 Conditional zoning.

In approving any zoning map amendment, the district council may give consideration to and adopt such reasonable requirements, safeguards and conditions (hereinafter referred to as 'conditions'), as may in its opinion be necessary to protect surrounding properties from adverse effects which might accrue from such zoning map.

30.51 The applicant may in his application consent to conditions believed to be desirable for the consideration of the planning commission and the district council. Conditions consented to by the applicant in the application, or in the evidence adduced before the district

council shall be binding if imposed by the district council. Conditions adopted by the district council shall become a permanent adjunct to the zoning map amendment and shall be binding so long as the zoning category granted by the council shall remain in effect.

30.52 When a zoning amendment is approved subject to adopted conditions, the applicant shall have ninety (90) days from the date of approval to accept or reject the land use classification as conditionally approved. The district council's action shall be final upon entry of an order incorporating the acceptance or rejection of the land use classification as conditionally approved. The applicant shall advise the council in writing within such period of the land use classification as conditionally approved. Failure to advise in writing within such period of such acceptance or rejection shall be deemed a rejection thereof. Rejection shall have the effect of voiding the zoning amendment and reverting the property to its prior zoning classification, and such reversion shall be evidenced by the passage of a board order by the district council."

Understanding of the disparate contentions of the litigants requires a knowledge of the dates on which the District Council acted and the nature of the action taken thereon from the first to the final action taken by the District Council:

| Action | Date |
|---|---|
| Public Hearing | September 9, 1970 |
| Action Deferred | October 7, 1970 |

|  | DATE |
|---|---|
| Vote to Approve C-O with conditions | October 23, 1970 |
| Notice of October 23rd action sent | December 2, 1970 |
| Acceptance of Conditions | December 28, 1970 |
| Vote to Approve after acceptance | February 2, 1971 |
| Notice of 2/2/71 decision sent | February 10, 1971 |
| Petition for Reconsideration received | March 4, 1971 |
| Vote to Reconsider | April 8, 1971 |
| Denial of Reclassification after Reconsideration | April 30, 1975 |
| Appeal to Circuit Court for Prince George's County | May 28, 1975 |

The litigants concede that Bahrami's appeal from the final order of the District Council was taken within thirty (30) days of its passage and permitted consideration whether the order appealed from was lawfully within its power at the time of passage.

The trial court held: (a) that the District Council vote to reconsider on April 8, 1971 was taken beyond the sixty day period provided by § 30.41 (b) of the ordinance and thus was beyond the lawful reach of District Council action, and (b) that the order passed by the District Council on February 2, 1971, granting conditional zoning reclassification was the final order of the District Council that fixes the zoning applicable to the subject property.

County's position on what we conceive to be the basic issue on this appeal is that February 10, 1971 [2] is the beginning date for calculation of the sixty day period within which the District Council is authorized to reconsider a prior reclassification and that the vote to reconsider on April 8, 1971, was timely taken.

Bahrami takes two alternative positions:

1. "[T]he 'original decision' of the District Council was on the October 23, 1970, date when the District Council originally or first decided to

---

2. February 10, 1971, is the date upon which the District Council mailed to the parties a notice of its conditional reclassification order of February 2, 1971.

conditionally grant the requested rezoning, and is the date from which the sixty (60) days [of § 30.41 (b)] is measured, and that the action by the District Council in granting the Petition for Reconsideration on April 8, 1971 was beyond the sixty (60) day requirement."

2. "[E]ven if the date of the District Council decision on February 2, 1971, in granting the approval of the rezoning after the conditions had been accepted is considered as the 'original decision , the District Council still acted five (5) days beyond the sixty (60) day requirement when it acted on the Petition for Reconsideration on April 8, 1971."

In *Crozier v. Co. Comm. Pr. George's Co.*, 202 Md. 501, 97 A. 2d 296 (1953), it was said at 506 [298]:

"The requirements of the [zoning] ordinance are binding on the Commissioners sitting as a District Council and they may exercise their zoning powers only by following the procedure specified; this is implicit, if not explicit, in Sections 985 and 988 of the Prince George's County Code and Sections 4 and 5 of Article 66B of the Code (1951 Ed.). The cases spell out the necessity of substantially complying with legislative procedural and substantive prerequisites as to notice and hearings if the action of zoning authorities is to be valid."

It is incumbent upon us accordingly, to examine and declare the meaning and effect of the subject zoning ordinance.

The rules of law governing our action in such a determination have been clearly stated and firmly fixed, as is demonstrated by reference to three decisions of the Court of Appeals of Maryland.

In *Md.-National Capital Park and Planning Comm., et al. v. Mayor and Council of Rockville*, 272 Md. 550, 325 A. 2d 748 (1974), it was said at 555-56 [752]:

"The cardinal rule of statutory construction is to ascertain and carry out the real legislative intent, *Radio Com., Inc. v. Public Serv. Comm'n*, 271 Md. 82, 93, 314 A. 2d 118 (1974); *Scoville Serv., Inc. v. Comptroller*, 269 Md. 390, 393, 306 A. 2d 534 (1973); *Silberman v. Jacobs*, 259 Md. 1, 267 A. 2d 209 (1970); *Atlantic, Gulf v. Dep't of Assess. & T.*, 252 Md. 173, 249 A. 2d 180 (1969); and in ascertaining that intent, the Court considers the language of an enactment in its natural and ordinary signification, *City of Gaithersburg v. Mont. Co.*, 271 Md. 505, 511, 318 A. 2d 509; *Grosvenor v. Supervisor of Assess.*, 271 Md. 232, 315 A. 2d 758 (1974); *Radio Com., Inc. v. Public Serv. Comm'n, supra.* If there is no ambiguity or obscurity in the language of a statute, there is usually no need to look elsewhere to ascertain the intent of the legislature, *Scoville Serv., Inc. v. Comptroller, supra; Atlantic, Gulf v. Dep't of Assess. & T., supra.*"

In *Amalgamated Cas. Ins. Co. v. Helms*, 239 Md. 529, 212 A. 2d 311 (1965), it was said at 535-36 [315-16]:

"Of course, the cardinal rule of statutory construction is to seek and carry out the true intention of the Legislature. *Casey Devel. Corp. v. Montgomery County*, 212 Md. 138. And in so doing, it sometimes becomes necessary, under unusual circumstances, to look to the spirit and purpose of an enactment. *Cearfoss v. State*, 42 Md. 403; *Bickel v. Nice*, 173 Md. 1; *Smith v. Higinbothom*, 187 Md. 115. But Chief Judge Marbury very clearly pointed out in *Clark v. Tawes*, 187 Md. 195, that the rule that real intent must prevail over literal intent is adopted only when the literal words of a statute say something that the Legislature could not possibly have meant. He said that this Court has repeatedly stated that as a general rule a court may not surmise a legislative intention contrary to the plain

language of a statute, nor insert or omit words to make the statute express an intention not evidenced in its original form. See also *Pressman v. State Tax Comm.*, 204 Md. 78 and cases cited therein; and *Fowel v. State*, 206 Md. 101. And, if a statute be plain and free from ambiguity, its application may not be enlarged or extended by construction. *Grimm v. State*, 212 Md. 243.

"In other words, the courts, in the absence of ambiguity, should, as a general rule, confine themselves to a construction of a statute as written, and not attempt, under the guise of construction to supply omissions or remedy possible defects in the statute, or to insert exceptions not made by the Legislature."

In *Prince George's Co. v. White*, 275 Md. 314, 340 A. 2d 236 (1975), it was said at 317-18 [239]:

"No rule of statutory construction is more fundamental than that, in ascertaining the intention of the Legislature, we are to read all parts of a statute together to find the intention as to any one part; and that all parts are to be reconciled and harmonized if possible."

It becomes quickly apparent that the sixty (60) day limitation upon the time within which a motion for reconsideration must be acted upon by the District Council cannot be held to begin on October 23, 1970, the date upon which the District Council voted *initial and tentative approval* of C-0 zoning with conditions.

Reconsideration by the District Council is forbidden, either upon petition by a party or upon its own motion, unless "filed or acted upon within the time set forth in subparagraph (a) [of § 30.41]." Action then is required thereon by the District Council "within sixty (60) days of the original decision." § 30.41 (b), *supra*. Subparagraph (a) of § 30.41 in turn requires that a petition for reconsideration

must be filed within "thirty (30) days after the date of mailing the notice of the action or final decision of the district council on any application for a zoning map amendment."

Unless the thirty day limitation imposed upon the parties for the filing of petitions to reconsider and the sixty day limitation upon the power of the District Council to reconsider commence on the same date certain, an absurd result surfaces in conditional zoning cases. If the date of tentative initial approval of conditional reclassification (in this case October 23, 1970) were held to be the triggering date for the commencement of limitations upon the power of the District Council to reconsider its prior action, the applicant could defeat such reconsideration by the expedient of *delaying his acceptance* of the conditions imposed upon the reclassification *to a date subsequent to the sixtieth day after passage of the tentative order.* This is so because an applicant has ninety (90) days within which to accept or reject conditional zoning. § 30.52, *supra.*

We think that *all* zoning reclassifications, including grants subject to conditions, were intended to be subject to the reconsideration provisions of the ordinance.

Moreover, under the ordinance, the tentative grant of conditional rezoning to an applicant automatically would abort and the property would revert to its prior zoning classification if the applicant rejected or failed timely to advise the District Council of acceptance (§ 30.52). In short, the decision of October 23, 1971, was totally lacking in finality. We find no legislative intention to have the reconsideration provisions of the ordinance triggered by the passage of such a tentative order.

We find the language used in *Greenbelt Consumer v. Acme Mkts.,* 272 Md. 222, 226-27, 322 A. 2d 521, 524 (1974), particularly pertinent to the subject zoning ordinance:

"The principles which guide us in construing legislative enactments have been consistently applied by this Court for many years. Of these, the

cardinal rule requires that the legislative intent be discovered and carried out. This purpose must be discerned from the words the Legislature chose to employ unless there exists an ambiguity or obscurity, in which case we need to look elsewhere. *M.T.A. v. Balto. Co. Revenue Auth.*, 267 Md. 687, 695, 298 A. 2d 413 (1973). This is so, in the absence of a constitutional defect, even if we believe the policy 'of the statute to be unwise, harsh or unjust. *Flanagan v. Flanagan*, 270 Md. 335, 337-38, 311 A. 2d 407 (1973). Thus, in construing statutory language, we consider the words utilized in their natural and ordinary significance. However, if the phraseology employed has a doubtful meaning, this Court will examine the legislative intent so as to determine 'the objectives and purposes of the enactment and the consequences resulting from one meaning rather than another . . . .' *Md. Medical Service v. Carver*, 238 Md. 466, 478, 209 A. 2d 582 (1965). Furthermore, if necessary in doing so, we will examine all parts of all pertinent legislative enactments which shed light on what is the true legislative purpose. *M.T.A. v. Balto. Co. Revenue Auth., supra; Hunt v. Montgomery County*, 248 Md. 403, 414-15, 237 A. 2d 35 (1968); *Amalgamated Ins. v. Helms*, 239 Md. 529, 535-36, 212 A. 2d 311 (1965)."

We see in the subject ordinance a plain legislative purpose to grant to the parties a right to seek reconsideration of final action by the District Council but to impose stringent time limitations upon the initiation of such a right. We see as well an equally stringent time limitation upon the power of the District Council to reconsider a prior final action. Such a legislative purpose is achieved only if the parties' right and the District Council's duty is limited to final orders granting or denying requested reclassification with the same triggering date for the commencement of limitations upon the exercise of that right and that duty.

We find nothing in the ordinance indicating a legislative purpose to exclude conditional zoning reclassifications from the reconsideration process or to indicate that the process was intended to be triggered by orders that are manifestly interlocutory in nature.

In sum, we hold that the initial, tentative grant of conditional zoning [3] is not such an order as will trigger commencement of limitations.

We turn, accordingly, to the ultimate question: Was commencement of the period of limitations upon the power and authority of the District Council to act upon the petition for reconsideration triggered by the District Council's action: (a) on February 2, 1971 — when it voted to approve conditional rezoning after applicant's acceptance of the conditions; or (b) on February 10, 1971 — when it gave notice of the voted approval of conditional rezoning by mailing the order to the parties to the zoning action?

If the date February 2, 1971, is the triggering date then the petition for reconsideration filed on March 4, 1971, was beyond the time limited by § 30.41 (a) (30 days). Similarly, in such a case the District Council's vote to reconsider, taken on April 8, 1971, was beyond the time limited by § 30.41 (b) (60 days).

On the other hand, if the date February 10, 1971, is the triggering date, then both the petition for reconsideration and the District Council's action upon it were timely.

We think that February 10, 1971, was the triggering date. The clear legislative determination to authorize conditional zoning contains not the slightest indication that the revisory and finality provisions of the ordinance should not apply to final orders in such cases.

The reconsideration provisions are interacting and apply fully to conditional reclassifications under § 30.5, *et seq.*, *supra.*

---

**3.** § 30.52, *supra*, provides, *inter alia*, that: "Failure [of the applicant] to advise in writing within such period of such acceptance or rejection shall be deemed a rejection thereof. Rejection shall have the effect of voiding the zoning amendment and reverting the property to its prior zoning classification . . . ."

We hold, accordingly, that the petition for reconsideration of March 4, 1971, was filed with thirty (30) days of the effective date of conditional rezoning (February 10, 1971). Similarly, the District Council's vote to reconsider (April 8, 1971) was taken within sixty (60) days of the effective date of the original decision (February 10, 1971). *See* § 30.41 (b), *supra.*

We are reinforced in this view by the fact that if the period of limitations for filing a petition for reconsideration were held to begin on the date of the vote by the District Council, the parties' opportunity to seek reconsideration would be lost if notice of decision was withheld for thirty-one days. In such a case, the ordinance's obvious purpose to assure meaningful notice of decision to parties to zoning cases would become a mockery.

> *Order reversed and cause remanded for further proceedings not inconsistent with this opinion.*
>
> *Costs to abide the result of the ultimate decision.*