## STATE DEPARTMENT OF ASSESSMENTS AND TAXATION ET AL. *v.* ELLICOTT-BRANDT, INC.

[No. 143, September Term, 1964.]

330

*Decided January 11, 1965.*

The cause was argued before HAMMOND, HORNEY, MAR-BURY and BARNES, JJ., and DIGGES, J., Chief Judge of the Seventh Judicial Circuit, specially assigned.

*Martin B. Greenfeld, Assistant City Solicitor of Baltimore,* with whom were *Thomas B. Finan, Attorney General, Stuart H. Rome, Assistant Attorney General,* and *Joseph Allen, City Solicitor,* on the brief, for the appellants.

*David Ross,* with whom were *Ober, Williams & Grimes* on the brief, for the appellee.

HAMMOND, J., delivered the opinion of the Court.

State and city tax gatherers are appealing from a determination by Judge Carter in the Baltimore City Court that, under Ordinance 1340 of Baltimore City (1957-58), exempting manufacturers from certain tangible personal property taxes, Ellicott-Brandt, Inc., the appellee, was not subject to assessment for any such taxes for 1962 on metal products which it had custom-made or fabricated to the specifications of its customers, sold at retail within the meaning of the Maryland Sales Tax Act and delivered from its factory.

By Ordinance 462 (1918-19), codified as Sec. 84 of Art. 46

of the Baltimore City Code (1927), the city "in order to encourage the growth and development of manufacturing industries in Baltimore City * * *" exempted from ordinary municipal taxation "raw material on hand" and "manufactured products in the hands of the manufacturer," as well as machinery and equipment used in manufacturing which had theretofore long been exempted. The fifth paragraph of Sec. 84 provided as follows:

> "In case any person, firm or corporation engaged in manufacturing in Baltimore City shall also be engaged in the business of a jobber, or wholesaler or retail merchant, in Baltimore City, nothing, in this section, shall be construed to exempt the personal property, other than goods of his own manufacture, used in connection with said business of jobber, or wholesale or retail merchant."

Sec. 84 was repealed by Ordinance 52, approved March 6, 1944, and the essence of its provisions, including the reference to a retail merchant, was reordained in a new Sec. 80 of Art. 46 of the Baltimore City Code. By Ordinance 111, effective December 17, 1947 (some five and a half months after the State Sales Tax Act first became effective), Sec. 80, as passed in 1944, was amended to include a proviso "* * * that manufactured products in the hands of the manufacturer [except milk and bread] * * * and held in the hands of said manufacturer as a retail merchant * * *" were not to be exempt.

Sec. 80, as passed in 1944 and amended in 1947, was repealed and reordained by Ordinance 1503 effective December 20, 1950, which was codified as Sec. 50 of Art. 37 of the Baltimore City Code (1950). The first paragraph of Sec. 50, for the same reasons and purposes declared in the earlier ordinance, exempted from ordinary municipal taxation all personal property of every description used chiefly or entirely in connection with manufacturing, including manufactured products in the hands of the manufacturer, and contained the 1947 proviso that the products of the manufacturer in his hands and destined for sale at retail should not be exempt, although the words "* * * held in the hands of said manufacturer *as a retail merchant* * * *" were

changed to "* * * held in the hands of said manufacturer *for sale at retail by such manufacturer* * * *." In the third paragraph of Ordinance 1503, dealing with the personal property of jobbers and wholesalers, the reference to retail merchants was omitted.

Paragraph 2 of Sec. 50, new in content, was designed to furnish a way to measure the taxability of products of the manufacturer which were not included in the exemptions granted by Sec. 50. It said that in order to determine the "* * * fair average value of the inventory for sale at retail for the twelve months preceding the date of finality, it shall be presumed in the absence of clear evidence to the contrary that a ratio of the entire inventory held by the taxpayer during said period shall be subject to assessment equal to the ratio that the total retail sales bear to the total sales for such period," and then added the following:

> "The terms 'retail sale' and 'sale at retail' as used in this section shall be construed to be a sale in any quantity or quantities of any tangible personal property to any person or persons, association or corporation, as said terms are defined in Section 259 of Article 81 of the Annotated Code of Maryland (1947 Supplement) and any amendments thereof, when the sale is for any purpose other than those in which the purpose of the purchaser is (1) to resell the property so transferred in the form in which it is received by him or it, or (2) to use or incorporate the property so transferred as a material or part of other tangible personal property to be produced for sale by manufacturing, assembling, processing or refining."

The city, much to the resentment of some, perhaps all manufacturers, repealed the manufacturers' tax exemption by Ordinance 643, effective December 5, 1956, in order to avoid, as far as possible, an increase in the tax rate. See *Kimball-Tyler v. Baltimore City,* 214 Md. 86, 89. By Ordinance 1340, effective December 31, 1958, the city, fearing that most manufacturers would flee the city as some had already done, and that new ones would be discouraged from beginning operations in

the city, repealed Ordinance 643 and reinstated the manufacturers' tax exemption by stages (for 1959 twenty-five per cent, for 1960 fifty per cent, for 1961 seventy-five per cent, and for 1962 and thereafter "the entire amount of the total assessed valuation of personal property used in manufacturing").

Ordinance 1340 does not differ in any material respect here pertinent from Ordinance 1503, in effect prior to 1956. Like its predecessor it was to be codified as Sec. 50 of Art. 37 of the Baltimore City Code. Its stated purposes were the same as those of the earlier exempting ordinances. Sec. 50 (a) of the revived law, as had its ancestor, exempted "* * * personal property of every description used entirely or chiefly in connection with manufacturing in Baltimore City * * *" including "* * * manufactured products in the hands of the manufacturers * * *." Sec. 50 (b) provided, as did its immediate forbear, that "* * * manufactured products in the hands of the manufacturer [with exceptions as to milk, bread, food and food products] * * * and held in the hands of said manufacturer for sale at retail by such manufacturer, shall not be exempt from taxation under the terms and provisions of this section." Sec. 50 (c) spells out exactly, as did the similar ordinance repealed in 1956, how the fair average value "* * * of the inventory for sale at retail for the twelve months preceding the date of finality * * *" is to be determined "in the absence of clear evidence to the contrary." It again relates the meaning of the terms "retail sale" and "sale at retail" as used in the ordinance to the meaning of those terms in the Maryland Sales Tax Act, as defined in the Code (the reference in the 1958 ordinance is to Sec. 324 of Art. 81 of the Code (1957)), whereas in the ordinance repealed in 1956, the reference was to the similar then existing provisions numbered Sec. 259 of Art. 81 of the Code (1947 Supp.), and repeats the provisions that the manufacturers' exemption is applicable if the purpose of the buyer is to resell the property or to use or incorporate it in manufacturing, assembling, processing or refining.

Sec. 50 (d) provides, as did the corresponding paragraph of Ordinance 1503, that if a manufacturer is also a jobber or wholesaler—with no mention of a retail merchant—his personal property "other than goods of his own manufacture," used in connection with his business, shall not be exempt.

The parties have stipulated all the pertinent facts. Ellicott's business is the manufacture and fabrication of metal products. It does not maintain a stock or shelf inventory of finished products which it holds out for sale at retail to the public but instead produces finished metal products to the specifications of a customer. It is a manufacturer within the meaning of Ordinance 1340. The only manufactured products on its premises from time to time are those awaiting delivery to the customer. During 1961 it had on its premises a total of one hundred eighty manufactured products "* * * which were sold at retail within the meaning of Ordinance 1340, 1957-1958" and which, variously, remained at the factory from less than one working day (as to sixty-six items) to from eleven to thirty days (as to thirty items), for example.

Ellicott maintains records showing the monthly value of its inventory of raw materials and of its inventory of goods-in-process but no inventory of finished goods. The value of un-delivered finished goods is reflected in its goods-in-process inventory until actual delivery is made.

The fair average value of Ellicott's total inventory for the twelve months preceding January 1, 1962, was $506,810; the fair average value of finished goods sold at retail during 1961 was $4,906. Total gross sales for 1961 were $2,013,116 of which 13% or $256,014 were subject of the Maryland Retail Sales Tax.

The stipulation recites that it is Ellicott's contention that it is not taxable because the tax which Sec. 50 (b) imposes on a retailing manufacturer—by removing the exemption on products which are "* * * held in the hands of said manufacturer for sale at retail by such manufacturer * * *"—is a retail inventory tax and it maintains no such inventory because it manufactures for retail sale only in response to prior orders. If it is taxable at all, Ellicott says, all of its inventory is exempt from Baltimore City personal property taxation except finished goods which are sold at retail within the meaning of Ordinance 1340 (1957-58) and the assessment, on this theory, would be $2,940.

The position of the tax gatherers is that Ordinance 1340, read as a whole, makes the provisions of the Maryland Sales

Tax Act the measure of whether a manufacturer holds goods for sale at retail and that Ellicott, under that test, clearly does so. The harvesters of tax tribute to the governments go on to say that not only finished goods sold at retail but also "* * * raw materials and goods-in-process which ultimately go into finished goods which are sold at retail within the meaning of Ordinance 1340, 1957-58, are subject to assessment for Baltimore City personal property taxation * * *." They contend further that the formula in Sec. 50 (c) of Ordinance 1340 must be applied "* * * because the taxpayer offers no clear evidence of the fair average value of such raw materials and goods-in-process." The amount of the assessment on this theory would be $39,530.

The Maryland Tax Court held that Ellicott was taxable on an assessment equal to the fair average value in 1961 of products in the factory which were later delivered to customers in sales at retail as defined in Code (1957), Art. 81, Sec. 324 (because of the incorporation of that section by reference into Sec. 50 of Art. 37 of the Baltimore City Code). That court further held that Ellicott had offered clear evidence of the fair average value of the finished products on hand for delivery to customers pursuant to a sale at retail and, therefore, the statutory formula did not come into play, and found that the assessment should be $2,940, rather than $39,530.

We think the Tax Court reached the right results. The object of judicial interpretation of legislative enactments is to find and give effect to the intention of the legislative body as expressed in the act as a whole and, since the plainest words in a statute may be controlled by the context, that construction is to be reached which will, if possible, harmonize all parts of the statute, one with the other and make them all, as nearly as may be, consistent with the general scope and purposes of the legislation. *Associated Acceptance v. Bailey*, 226 Md. 550, 556. Within this framework courts also recognize that the general language of one part of a statute may be controlled by the more specific phraseology of another, *Rafferty v. Comptroller*, 228 Md. 153, 158, and that if words are of a doubtful or ambiguous meaning their signification may be enlarged or restricted to make them expressive of the intention of the Legislature, if that in-

tention is clearly ascertainable. In such case, aid to the true meaning of the statute may be found in the history of the adoption of the law and the objects sought to be attained. *Pressman v. Barnes,* 209 Md. 544.

The rule of construction last mentioned was found applicable to a tax exemption statute in *Armco Steel v. State Tax Commission,* 221 Md. 33, and to a tax statute in *Compt. of Treasury v. Crofton Co.,* 198 Md. 398. In *Armco* Chief Judge Brune for the Court said of the word "refining" (at p. 41 of 221 Md.) :

> "The appellees argue that because this definition is that listed first in Webster, it is the fundamental definition which expresses the usual and ordinary meaning of the word. The error in this reasoning is that it attempts to place the use of the word 'refine' in a vacuum without regard to the subject to which the Ordinance is directed. The exemption was directed at refiners and processors of ores and other unrefined metals. In construing the language of a statute, the court must consider not only the literal or usual meaning of words, but their meaning and effect considered in the light of the nature of the subject matter and the purposes to be accomplished. [citing cases] * * * This rule applies to exemption enactments as well as to other laws."

In *Crofton* Judge Markell, for the Court, said (at p. 403 of 198 Md.) : " 'Manufacture', 'product' and like words are words of broad scope. Like other words, they must be construed, broadly or narrowly, in the light of their context and the legislative purpose."

*Pressman v. State Tax Comm.,* 204 Md. 78, 90, went to the length of suggesting that if the intention of the legislative body, gathered from the entire enactment is clear, it should be given effect even though it may be necessary to strike out or insert certain words in the law to do so.

Reading Ordinance 1340 as a whole, in light of the history of its adoption and of the objects sought to obtained, we find the legislative intent to be clear. A manufacturer was again to be exempt from ordinary municipal taxation except when he

acted as a retail merchant of his output; that is to say, he was to be exempt from taxation on "manufactured products in the hands of the manufacturer" except as to that part of his output in his hands held for "sale at retail" as Sec. 50 (b) puts it. Sec. 50 (c) makes it plain that whenever and wherever the phrases "retail sale" or "sale at retail" are used in Sec. 50, they are to be construed to be "* * * a sale in any quantity * * * to any person * * * as said terms are defined in Sec. 324 of Art. 81 of the Annotated Code of Maryland (1957 Edition) and any amendments thereof * * *" unless the sale is to a purchaser who is to resell the article in the form received or to use or incorporate the item as part of other tangible personal property to be produced for sale. Sec. 324 (f) of Art. 81 provides that "* * * the term 'sale at retail' shall include but shall not be limited to the following: * * * (2) Any production, fabrication or printing of tangible personal property on special order for a consideration."

The history of the ordinance as to the treatment of a manufacturer who also acted as a retail merchant of his products and the mechanics employed by the City Council of incorporating the definitions of the sales tax law into the ordinance to indicate that portion of the products of the manufacturer which were taxable, makes manifest the legislative purpose to exempt as an integral part of the manufacturing process manufactured products which are not sold to the ultimate consumer and to impose as part of the retailing process ordinary personal property taxes on the average value of products of the manufacturer in his hands which he sells to the ultimate consumer (and which, therefore, would be subject to the sales tax). The interpretation Ellicott seeks to give the phrase in Sec. 50 (b) "* * * and held in the hands of said manufacturer for sale at retail by such manufacturer shall not be exempt * * *," namely, that it means that only a stock or shelf inventory, uncontracted for and maintained for retail sale to the public was meant to be taxed, gives too restricted a meaning to the ordinance, and must be rejected as being contrary to a clearly ascertainable different legislative intent. The whole phrase used—"* * * manufactured products in the hands of the manufacturer, * * * and held in the hands of said manufacturer for sale at retail by such

manufacturer shall not be exempt from taxation under the terms and provisions of this section"—is not, it fairly may be said, a model of grace and clarity, but we think, in the context of the history of the ordinance and of what precedes and follows the phrase in the ordinance, it was intended to mean no more than that products in the possession of the maker thereof which were intended to be sold at retail (and when they were, were subject to sales taxes) were subject to assessment for ordinary personal property taxes.

Ellicott's one hundred eighty items sold at retail came within the ambit of the taxing provisions of the ordinance and the fair average value of those items in the hands of the manufacturer in 1961 was subject to assessment.

The state and city contend that the formula inserted in Sec. 50 (c) to determine the fair average value of the products of the manufacturer in his hands for sale at retail—that, in the absence of clear evidence to the contrary, there shall be subject to assessment that percentage of the entire inventory of the taxpayer during the measuring period which the total retail sales bear to the total sales during such period—means that the "entire inventory" includes raw materials, goods-in-process, and finished goods and the statutory ratio, therefore, must include not only finished goods but also some raw materials and goods-in-process. On these premises it is argued that if a taxpayer wishes the formula not to apply, he must present clear evidence not only of the actual figures as to the finished products (as Ellicott concededly did) but also as to "the amount of raw materials and goods-in-process on hand that will go into the finished goods that will be held for sale at retail."

Our reading of the ordinance precludes the interpretation sought by the tax gatherers. The manufacturer is exempt as to raw materials while he acts as such. He is taxable only in his role of retailer, and a retailer deals only in finished products. The ordinance intended, as we see it, to continue the exemption on the products of the manufacturer until they become finished products ready for sale at retail and, only from then on, to subject them to taxation. The ordinance seeks to have ascertained the fair average value of "the inventory for sale at retail" during the twelve months before the date of finality. An "inventory

for sale at retail" can only mean personal property ready for sale—that is, finished products.

The formula seeks to reach an approximately accurate appraisal of the value of the finished products of the manufacturer which he sells at retail. The value of the raw materials incorporated into the finished product will be reflected in that value but the finished product ordinarily will have a substantially greater value than the cost of the material in it since the cost of skill and labor will also be reflected, and this will be true of the finished products sold for resale or further use in manufacturing, and so not subject to the sales tax, as well as to such products sold by the maker to the ultimate consumer which are subject to sales tax. Thus the formula would not seem to be an unreasonable method of reaching a result which in general well might not be too different from that the taxpayer could show by actual records and figures as to the fair average value of finished products held for retail sale.

Ellicott's cost accountant submitted to the Tax Court a compilation of sales in 1961 which were subject to sales tax, supported by job numbers, completion dates, shipment and billing dates and direct labor and material costs. A certified public accountant submitted another compilation showing the fair average value on cost of Ellicott's manufactured products held for sale at retail in 1961. From the testimony, the Tax Court found that Ellicott had produced the clear evidence that Sec. 50 (c) requires if the formula is not to be applicable, and we think the finding was justified.

The order of the Baltimore City Court of May 8, 1964, which reversed the order of the Maryland Tax Court dated June 10, 1963, must be reversed and the said order of the Tax Court finding an inventory of finished products held for sale at retail subject to an assessment of $2,940 reinstated.

*Order appealed from reversed, with costs, and order of June 10, 1963, of the Maryland Tax Court reinstated.*