GRAY, ET AL. *v.* BOARD OF SUPERVISORS
OF ELECTIONS OF BALTIMORE
COUNTY, ET AL.

[No. 226, September Term, 1966 (Adv.).]

658

*Decided August 4, 1966.*

*Concurring opinion filed August 23, 1966.*

The cause was argued before the entire Court.

*J. Elmer Weisheit, Jr.,* with whom was *Edward C. Covahey, Jr.,* on the brief, for Stanley Sollins, part of appellants; *Harry S. Shapiro,* with whom was *E. Scott Moore, County Attorney,* on the. brief, for Baltimore County, another appellant; *John Bishop, Jr.,* on the brief for William A. Gray, other appellant.

*Richard C. Murray* and *John J. Caslin* for Board of Super-

visors of Elections of Baltimore County, part of appellees; no brief filed for other appellee.

HAMMOND, J., delivered the opinion of the Court. BARNES, J., concurs in the result. Concurring opinion at page 666, *infra*.

In June the County Council of Baltimore County duly enacted Bill No. 54 of the Legislative Session of 1966 which amended § 206 of the Charter of the County (that section established seven councilmanic districts) to divide the County into seven new such districts, approximately equal populationwise, which coincided geographically with the seven State senatorial residence and voting districts provided for by Ch. 735 of the Laws of 1966. As introduced, the bill provided that the voters of each councilmanic district were to elect as a councilman one resident of the district, but this provision was deleted during the passage of the bill, leaving in apparent unimpaired effect both § 201 (a) of the Charter providing for a council of seven members, each of whom must reside in a different one of the districts established by § 206, and § 201 (b), providing that:

> "all members of the county council shall be elected on the general ticket by the qualified voters of the entire county as members of the General Assembly are or may be elected, and they shall likewise be nominated as members of the General Assembly are or may be nominated under provisions of the laws of the State of Maryland * * *."

Soon thereafter G. Walter Tyrie, Jr., an incumbent councilman and a candidate for reelection, filed a suit in the Circuit Court for the County seeking a declaration that a candidate for the council must be selected only by the qualified voters of the district in which he resides by reason of the language of § 201 (b) that councilmen are to be elected as are members of the General Assembly or, alternatively, the dictates of the federal constitution as interpreted by the Supreme Court.

Judge Proctor ruled against these contentions in a sound

opinion, holding (a) that the constitution and laws of Maryland and the provisions of the County Charter required election of councilmen by the voters of the entire County despite those provisions of § 201 (b) of the Charter that the election and nomination of councilmen are to be the same as those for the members of the General Assembly (he read this to mean that councilmen should be nominated and elected in the same procedural and mechanical way as members of the General Assembly are or may be), and (b) that the election of councilmen from residence districts concededly equal in population by the voters of the entire County met the test of constitutionality under the one-man, one-vote principle established by the Supreme Court.

Councilman Tyrie announced he would not appeal, and the present suit then was instituted by two registered voters of Baltimore County, one a Democrat from the Second District and one a Republican from the Fourth District, seeking a declaration against the Board of Supervisors of Elections and the County that § 201 (b) of the Charter requires election of councilmen by districts and alleging that if it does not it is unconstitutional and the unconstitutionality should be cured by the court decreeing voting by districts. The case was submitted to Judge Turnbull on those allegations of fact of the complainant's bill which were admitted by the Board's answer (the County did not participate) and the exhibits in the Tyrie case, including the Charter as submitted to the voters for adoption in 1956 together with the Reporter's notes, Ch. 735 of the Laws of 1966 establishing State senatorial districts with election by the voters of the district only, the County Council bill of 1966 revising the councilmanic districts, and opinions of counsel to the Charter Board. Judge Turnbull ruled as had Judge Proctor for the reasons set forth in Judge Proctor's opinion, which he adopted.

The contention of the appellants that councilmen in chartered counties must now be elected under State law only by the voters of the districts of their residences as members of the General Assembly now are to be is fully answered and disposed of adversely to that contention in our opinion in *Montgomery County Council, et al. v. Idamae Garrott, et al.,* 243 Md.

634, 222 A. 2d 164, and for the reasons therein set forth we hold that under State and County law the provisions of the Charter of Baltimore County for the county-wide election of councilmen from residence districts are valid and must be followed.

The contentions of the appellants that the constitutional demands of the one-person, one-vote principle established by the decisions of the Supreme Court require election of councilmen by districts, despite State law to the contrary, likewise must be rejected. We held in the *Montgomery County Council* case that county-wide voting for councilmen was a valid political device. The appellants concede that the plan of county-wide election from residence districts of equal population is facially valid under *Fortson v. Dorsey*, 379 U. S. 433, 13 L. Ed. 2d 401. They rely, however, on the caveat in *Fortson* (p. 439 of 379 U. S., p. 405 of 13 L. Ed. 2d), that it might be "that, designedly or otherwise, a multi-member constituency apportionment scheme, under the circumstances of a particular case, would operate to minimize or cancel out the voting strength of racial or political elements of the voting population," claiming that it is applicable to the situation in the instant case. This reliance is based on (a) the following figures (all being approximate) : there are presently 183,000 registered Democrats and but 49,000 registered Republicans in Baltimore County, 61,000 of the Democrats and 12,400 of the Republicans being in the Dundalk and Essex area, 11,700 Democrats and 5,900 Republicans being in the third councilmanic district, and 31,600 Democrats and 12,-900 Republicans in the fourth councilmanic district; and (b) the fact that in the general elections that have been held since the adoption of the Charter in Baltimore County four Republican candidates for councilman who won in their districts lost by reason of the vote elsewhere in the County—in 1957 (using approximate figures) the Republican won in the fourth district by 2,000 votes but lost at large by 6,000; in 1958 the Republican won in the third district by 1,100 votes but lost at large by 23,000; in 1962 the Republican won in the third district by 2,100 votes but lost at large by 980, and in the fourth district the Republican won the district by 1,500 votes and lost at large by 21,300.

662

The mere recital of the basis for the claim of the appellants that the Baltimore County plan of councilmanic elections is unconstitutional is enough to reveal that the claim falls far short of the demonstration in the record of invidious discrimination by reason of dilution of votes, which the Supreme Court has said is necessary if a plan of voting or apportionment is to be invalidated under the one-person, one-vote principle. See *Fortson*, (p. 439 of 379 U. S., p. 405 of 13 L. Ed. 2d) where in answer to the plea that the Georgia plan under review was adopted to minimize the strength of racial and political minorities, the Court said "When this is demonstrated it will be time enough to consider whether the system still passes constitutional muster. This question, however, is not presented by the record before us"); *Wright v. Rockefeller*, 376 U. S. 52, 11 L. Ed. 2d 512; *Burnette v. Davis*, 382 U. S. 42, 15 L. Ed. 2d 35, affirming *Mann v. Davis*, 245 F. Supp. 241 (E.D.Va. 1965); *Burns v. Richardson*, 384 U. S. 73, 16 L. Ed. 2d 376. See also the discussion on the point in the *Montgomery County Council* case, *supra*, and *Reed v. Mann*, 237 F. Supp. 22 (N. D. Ga. 1964), where a three-judge court upheld a method of electing county commissioners in a Georgia County—four residence districts in the County with election by the vote of the voters of the entire County—against the claim that the countywide vote overrode the will of the residents of a district.

Appellants draw sweeping and far-reaching conclusions from the meager data they have presented. They assert that the residence-in-district requirement serves to "disfranchise the voting weight of members of the Republican (minority) party and other sympathetic qualified voters who vote for the Republican candidate in a geographical area [the third and fourth districts] encompassing twenty-five per cent (25%) of the population and electorate of Baltimore County." They urge that "unless in-district voting is invoked, it is readily foreseeable and predictable, based on past performances, that the Republican nominee in each of these districts [the Third and Fourth] will be the popular choice within the district but once again will fail to be elected because of the dominant Democratic vote elsewhere in the County." They suggest that the interests of a "silk stocking" resident of the Green Spring Valley section of Baltimore

County are so different from those of a resident of Essex that the two obviously should not be permitted to combine to elect the same representative. They urge that "of course, the purest and proper form of representative government would require exactly the opposite, i.e. the in-district and not the out-of-district vote is to decide the district representative."

The appellants thus in effect say that the one-man, one-vote principle requires proportional representation or a plan which will insure or facilitate the election of a particular group in a particular area. We do not so understand the principle. Further, even if it be assumed that the statistics relied on were constitutionally significant, they do not justify the conclusions the appellants draw from them. They overlook or disregard the fact that seventeen of twenty-one councilmen who have been elected since the Charter was adopted were at large as well as in-district winners; that the vote of every voter of the County who voted for those seventeen, as well as the vote of every such voter who voted for the four in-district-winners-at-large-losers carried equal weight; that in-district winners in the Third and Fourth districts twice have been at large winners as well; that five of the total of twenty-one councilmen who have been elected under the Charter have been Republican; that the incumbent councilman from the Second District, which includes the "silk stocking" Green Spring Valley in which he lives, is a Republican who was elected by a plurality of both the in-district and at large vote; and that the present County Executive of Baltimore County (one of two who have been elected under the Charter), who is elected county-wide, is a Republican. The lamentations of the appellants as to the claimed past and feared future discriminations against Republican voters and office seekers seem to be unduly exaggerated in fact, and meaningless in law.

What the appellants really say is that the in-district system of voting for councilmen is politically preferable to and philosophically better than county-wide voting. This may be so but, assuming that it is, this does not, of itself, make the at large voting system unconstitutional.

The Charter Board which prepared the Baltimore County Charter decided, after it had been advised by its counsel that

county-wide voting must be used under State law for the election of councilmen, to recommend to the voters of the County a residence district requirement. It gave its reasons in its report to the people of the County in this wise:

"Councilmen will be elected by the voters of the entire County, but each Councilman will have to reside in one of the seven separate councilmanic districts. We believe that this will insure representation on the County Council for each section of the County with different problems and different interests, but at the same time the Council will have County-wide responsibility. * * * The election of councilmen by the voters of the entire County, but subject to a residence requirement will give the voters of the County, under the Charter, the maximum degree of representation possible under present law. It is a far greater guarantee of representation than is found in the existing system, whereby all County Commissioners and all representatives in the General Assembly are elected at large without any residence requirement at all." Proposed Home Rule Charter for Baltimore County, Maryland, XVI, XVII (1955).

This recommendation—which the voters accepted—reflected a legitimate election system for a local governmental unit, designed to eliminate the evils of "log rolling," and there is no suggestion or indication that it was influenced by a desire to favor any party or faction or any other improper motive. The Court in *Reed v. Mann, supra,* in approving a residence-district, county-wide voting plan for the election of County Commissioners in a Georgia county, rejected arguments similar to those of appellants in the instant case, and well and soundly said at p. 24 of 237 F. Supp.:

"Whether the selection of commissioners is to be on a district or county wide basis is a matter, in the beginning, of political or governmental policy and judgment. Commissioners have duties and responsibilities which relate specifically to their respective districts. On the other hand, the position embraces many mat-

ters which directly concern over-all county operations. The General Assembly of Georgia, at the instance of the DeKalb delegation in the General Assembly, adopted the statute in question. It provides for county wide elections. The General Assembly might have stopped at that point. However, it went further and diffused the representation by creating commissioner districts. The General Assembly might have taken the reverse tack and provided for district wide elections. It did not choose to do so. The selection of a system, so long as it is not proscribed by the federal Constitution, is, of course, not the business of the Court. And this brings us to the issue in the case.

"The facts presented together with the political and constitutional theories urged do not disclose any basis which demonstrates any offense to the Constitution."

In *Fortson* the Court said (p. 438 of 379 U. S., pp. 404-05 of 13 L. Ed. 2d) :

"It is not accurate to treat a senator from a multi-district county as the representative of only that district within the county wherein he resides. The statute uses districts in multi-district counties merely as the basis of residence for candidates, not for voting or representation. Each district's senator must be a resident of that district, but since his tenure depends upon the county-wide electorate he must be vigilant to serve the interests of all the people in the county, and not merely those of people in his home district; thus in fact he is the county's and not merely the district's senator. If the weight of the vote of any voter in a Fulton County district, when he votes for seven senators to represent him in the Georgia Senate, is not the exact equivalent of that of a resident of a single-member constituency, we cannot say that his vote is not 'approximately equal in weight to that of any other citizen in the State.' "

For the reasons given above and those detailed in the *Montgomery County Council* case, *supra,* on the point, we find no

constitutional infirmity in the present system of electing County Councilmen in Baltimore County.

*Order affirmed, with costs.*

BARNES, J., filed the following opinion, concurring in the result.

For the reasons set forth in my concurring opinion in *Montgomery County Council v. Garrott*, 243 Md. 634, 222 A. 2d 164 (1966), I concur in the result reached by the Court in this case.