SECRETARY OF STATE, ET AL. *v.* BRYSON

[No. 412, September Term, 1966.]

---

420

■■■■■■■■■■■■■■■■■

*Decided, per curiam, October 11, 1966.*

*Opinion filed November 14, 1966.*

The cause was argued before HAMMOND, C. J., and HORNEY, MARBURY, OPPENHEIMER, BARNES and McWILLIAMS, JJ., and CARTER, J., Associate Judge of the Eighth Judicial Circuit, specially assigned.

*Edward L. Blanton, Jr., Assistant Attorney General,* for appellants.

*William B. Dulany,* with whom were *James Willard Davis* and *Dulany & Davis* on the brief, for appellee.

OPPENHEIMER, J., delivered the opinion of the Court in which HORNEY and BARNES, JJ., concur. Concurring opinion by BARNES, J., at p. 428, *infra.*

After argument, we affirmed by per curiam order that part of the decree of the Circuit Court for Anne Arundel County which declared Section 42E (A-2) of Article 40 of the Code (Laws of Maryland, Spec. Sess., Oct. 1965) to be null and void, and ordered the case remanded for further order or decree of the Circuit Court. The reasons for our order follow.

The general scheme for reapportioning the Maryland Senate and House of Delegates contained in Chapter 2 of the Laws of Maryland, Special Session, 1965, which repealed and re-enacted Section 42 of Article 40 (the Act), was held constitutional in *Hughes v. Maryland Committee for Fair Representation,* 241 Md. 471, 217 A. 2d 273 (1966), *cert. denied,* 384 U. S. 950 (1966). The Act provides that the membership of the Senate shall consist of 43 Senators. The State is divided into 16 Senatorial Districts, of which District 2 is composed of Frederick and Carroll Counties and is to elect two Senators. Under the Act, both the primary and the general elections are at large within the District, without regard to the county residence of either the candidates or the voters. Section 42E (A-2) (the Section) reads as follows:

> "In any Senatorial District comprising more than one county and having two senators, not more than one resident of any one county may be nominated by one political party at the primary election, unless the

population of that one county exceeds the population of all the remaining counties in the district in the aggregate. Provided that any Senatorial candidate must be voted upon at large within the entire district at the primary election. The provisions of this subsection shall not apply to general elections for the office of State Senator."

Under the Act, two State Senators from District 2 are to be elected in the general election on November 8, 1966. In the primary elections held in that District on September 13, 1966, there were three candidates for the two offices in the Democratic Party, and four candidates in the Republican Party, of which the appellee, Mrs. Bryson, was one. The names and county residences of the four Republican candidates, and their order in the number of votes received, are as follows:

> First—Joseph H. Hahn, Carroll County
> Second—Mrs. Mary B. Bryson, the appellee, Carroll County
> Third—Mehrl F. Wachter, Frederick County
> Fourth—James S. Ensor, Frederick County

It has been stipulated that the 1960 Federal decennial census reports the population of Frederick County as 71,930 and that of Carroll County as 52,785. Therefore, if the Section is applicable and valid, only one Republican candidate resident in Carroll County could be nominated, and the appellee, although receiving the second highest number of votes in the Republican primary in the District, was not nominated because Mr. Hahn, who received the highest number of votes, was also a resident of Carroll County and Carroll County had a smaller population than Frederick County.

On the advice of the Attorney General, the Secretary of State refused to certify the appellee as a Republican nominee for a District 2 Senatorship. The appellee filed a bill for a declaratory decree and injunction against the Secretary of State and other appropriate State officials, asking that she be certified and for other relief. The case was submitted on the bill, answer and a stipulation; Judge Evans declared the Section to

be unconstitutional, null and void and enjoined the appellants from certifying anyone as a winner of the Republican primary, subject to further order or decree of the court.

I

It is suggested that the Section can be construed as not applicable to primary elections in District 2. Under such a holding, the appellee would still prevail, but we would not reach the question of the constitutionality of the Section.

We are mindful of the principle of statutory construction that if a legislative act is susceptible of two reasonable interpretations, one of which would not involve a decision as to the constitutionality of the act while the other would, the construction which avoids the determination of constitutionality is to be preferred. *Miller v. State,* 174 Md. 362, 373, 198 Atl. 710 (1938) and authorities therein cited. However, the clear language of the Section as well as what seems to us the manifest legislative intent as expressed in the Act as a whole constrain us to find that the Section is applicable to the situation before us.

The Section begins by stating that not more than one resident of any one county may be nominated by one political party at the primary election "in any Senatorial District comprising more than one county and having two senators." Under Section 42E (2) District 2 comes directly within this definition. Districts 15 and 16 also come within it under 42E (15) and (16). District 15 is composed of five counties, Cecil, Kent, Queen Anne's, Caroline and Talbot, and District 16 of four counties, Dorchester, Wicomico, Worcester and Somerset. Under the Act, of the 16 districts, only these three comprise more than one county and have two senators.

The exception which follows the one-county one-resident provision states: "Unless the population of that one county exceeds the population of all the remaining counties in the district in the aggregate." It is suggested that as District 2 has only two counties, the phrase "all the remaining counties in the district" is meaningless as to it, and that therefore the entire Section should be construed as not intended to be applicable to the District. The answer to this contention, in our opinion, is Code

(1957), Article I, Section 8, which provides as one of the rules of interpretation of the Code that "the singular always includes the plural, and vice versa, except where such construction would be unreasonable." Under this provision, which enacts a general rule of statutory construction, the phrase is to be taken as meaning "unless the population of that one county exceeds the population of the remaining county or all the remaining counties in the district." We find nothing unreasonable in such a construction. For a comparable situation and a similar holding, see *Forest Oil Corp. v. Davis,* 384 P. 2d 716 (Wyo. 1963).

We believe that this construction of the Section is in harmony with, rather than inconsistent with the legislative intention as expressed in the Act as a whole. The ascertainment of that intention is the object of judicial interpretation, *State Dept. of Assessments v. Ellicott-Brandt, Inc.,* 237 Md. 328, 335, 206 A. 2d 131 (1965). In that ascertainment, all parts and sections of the Act must be read and considered together. *Height v. State,* 225 Md. 251, 257, 170 A. 2d 212 (1961) and cases therein cited. But we find nothing in the structure or provisions of the Act which tends to alter what, to us, are the clear and unequivocal provisions of the Section.

The structure of the Act is succinctly set forth by Chief Judge Prescott, for the Court, in *Hughes.* The provisions as to the House of Delegates are of general application, except that specific enactments are made as to Baltimore City. Section 42E, dealing with the Senate, first sets forth the composition of the 16 districts by counties. 42E (A-1), immediately preceding the Section here involved, is of general application; it pertains to any senatorial district entitled to elect more than two senators. (A-2) follows the same structure; whereas (A-1) is made applicable to any district entitled to more than two senators, (A-2) refers to any district comprising more than one county and having two senators. We find no inference or implication in any part of the Act that any provision is more restricted than it expressly states. Specifically, we are unable to follow the suggestion that, because Districts 15 and 16 comprise more than two counties, although each has only two senators, those districts are the only ones intended to be included within the provisions of (A-2). If the Legislature had so intended, it could

easily have so provided. It did not do so, but, on the contrary, expressly made the Section applicable to any district having two senators and comprising more than one county, thereby including within its terms District 2 as well as the two Eastern Shore districts.

If language is plain and free of ambiguity and has definite and sensible meaning, it is conclusively presumed to be the meaning of the Legislature in enacting the statute. *Pineland Lumber Co. v. Miles,* 228 Md. 584, 587-88, 180 A. 2d 870 (1962) and cases therein cited. Courts should not attempt, under the guise of construction, to insert exceptions not made by the Legislature. *Amalgamated Ins. Co. v. Helms,* 239 Md. 529, 535-36, 212 A. 2d 311 (1965).

We find the language of the Section plain and free of ambiguity, and that the plain, unambiguous language is in accord with the legislative intention as expressed in the Act as a whole. Accordingly, we come to the constitutional question involved.

## II

The appellees contend that, because this Court held the Act constitutional in *Hughes,* we have sustained the validity of every section thereof. We find the argument to be without merit. In *Hughes,* we first considered the constitutionality of Senate Bill 8 of the Acts of Assembly, Extraordinary Session 1965. That bill we found invalid. None of the parties contested the validity of the Act which, by the terms of Bill 8, was to become effective if Bill 8 was declared unconstitutional. Despite the absence of any attack upon the validity of the Act, we deemed it appropriate to pass upon its constitutionality, in view of the mandate of the Supreme Court in *Maryland Committee etc. v. Tawes,* 377 U. S. 656 (1964). In holding the Act constitutional, we considered only its general underlying scheme of apportionment, and found that it constituted an honest and effective State effort to apportion both the Senate and the House of Representatives on a proportionate basis. The validity of no particular section of the Act was before us, and we did not pass upon the constitutionality of the Section here involved, directly or by inference.

The validity of the Section turns on the application of the

one-man one-vote principle under the Equal Protection Clause. We have discussed the impact of that principle, under the decisions of the Supreme Court, in *Hughes,* and in three subsequent cases, *Montgomery County Council v. Garrott,* 243 Md. 634, 222 A. 2d 164 (1966) ; *Gray v. Board of Supervisors of Elections of Baltimore County,* 243 Md. 657, 222 A. 2d 176 (1966) ; and *McGinnis v. Board of Supervisors of Elections of Harford County,* 244 Md. 222 A. 2d 391 (1966). We find the holdings of these cases determinative of the issue here presented.

The Equal Protection Clause, on which the one-man one-vote principle rests, extends to primary as well as to general elections. *Gray v. Board, supra; McGinnis, supra; Gray v. Sanders,* 372 U. S. 368 (1963). That principle is applicable to political subdivisions of a state. *Garrott,* 243 Md. at 639, 222 A. 2d at 166 and authorities therein cited.

There is no constitutional requirement that a voting district established by the Legislature for the nomination and election of state senators must be sub-divided as to the residence of the candidates or for any other purpose, on county or other lines. *Gray v. Board* dealt with the validity of an act of the County Council of Baltimore County which provided for the election of councilmen on a county-wide basis, but required that each member must reside in a different councilmanic district. Judge Hammond (now Chief Judge), for the Court, quoted with approval a statement in *Reed v. Mann,* 237 F. Supp. 22, 24 (N. D. Ga. 1964) that "whether the selection of commissioners is to be on a district or county-wide basis is a matter, in the beginning, of political or governmental policy and judgment * * * The selection of a system, so long as it is not proscribed by the federal Constitution, is, of course, not the business of the court." That statement is equally applicable to a multi-county district for the nomination and election of state senators. When the legislative body selects a system under which the representatives of the state's political subdivision are elected by the voters of the entire subdivision, with a requirement that each person elected shall be a resident of a different district within the subdivision, that system is constitutional if the districts are substantially equal in population. *Gray v. Board, supra.* But the

system is invalid if there is a malapportionment between the residence districts. *Garrott, supra* and *McGinnis, supra.*

The Legislature was under no constitutional requirement to provide for sub-districts—here, the counties—in the apportionment scheme, but once the sub-districts are given a place in the voting structure, the constitutional requirement applies to them as well as to the districts in which they play their part. As was stated in *Garrott,* in a quotation from *Davis v. Dusch,* 361 F. 2d 495, 497 (4th Cir. 1966), it is the distribution of representatives rather than the method of distributing them that must satisfy the demands of the Equal Protection Clause. The Supreme Court pointed out in *Fortson v. Dorsey,* 379 U. S. 433, 438 (1965), that a state senator elected under such a system is a representative of the entire district as well as of the sub-district in which he resides. His tenure depends upon the electorate of the entire district. However, by reason of the residence requirement, he is also a representative of the sub-district.

In *Fortson* and *Reed,* there was no allegation or evidence that the districts were unequal as to population. Neither case, therefore, in its actual holding that the system involved was constitutional, is apposite.

When, as in the Section here involved, there is a substantial malapportionment between the sub-districts (the counties), the one-man one-vote principle is violated both as between the voters in the counties and in the district as a whole. The voters of the district, in the primary, are confined in their choice by the county residences of the candidates, even though the counties have manifestly unequal populations, instead of having the right to choose between candidates from substantially equal sub-districts. The provisions as to the primaries contained in the Section are only applicable, under the Act, to the three districts to which the Section pertains, and therefore the residential requirements of the Section, based on disproportionate county populations, result in substantial inequalities in voting rights between the voters in those three districts and the voters in the other thirteen districts. The voters in the counties, insofar as the candidates represent them by reason of their resi-

dence, have their votes magnified or diluted by reason of the disparities in population between the counties in the district.

The invalidity of the Section, under the one-man one-vote principle, is clear. Frederick and Carroll Counties have populations in the respective approximate proportions of 7 to 5. Under the operation of the Section, Frederick County could have two nominees in the primary of one party while Carroll County would have none. In District 15 or 16, which, respectively, are comprised of five and four counties, one county could have just short of a majority of the population of the entire district and another county a small proportion of the district's voters, yet the smallest and the largest counties would each have the right to one nominee.

Because of the unconstitutionality of the Section, the primary in District 2 must be decided only on the basis of the district-wide vote, as in *Garrott,* without reference to the residence of the candidates.

BARNES, J., filed the following concurring opinion, in which HORNEY, J., concurred.

I concur in the result reached by the majority of the Court, but in my opinion it was not necessary to reach the constitutional ground upon which the majority decided the case.

It is well settled in both Maryland and in the federal courts that a constitutional issue will not be decided if the case can be decided on other grounds. *Middleman v. Maryland-National Capital Park and Planning Commission,* 232 Md. 285, 289, 192 A. 2d 782, 783 (1963).

In my opinion, we should apply this principle to this case because a proper construction of Section 42E (A-2) of Article 40 of the Maryland Code, Laws of Md. Spec. Sess. Oct., 1965, indicates a legislative intent that the Section was not intended to apply to Senatorial District 2. As I read this Section, it is clearly ambiguous. The first clause of the section would seem to apply to Senatorial District 2 as that district has more than one county and has two senators. Several lines later in the section, however, it is provided that the restriction shall not apply if "the population of that one county exceeds the population

of *all the remaining counties* in the District in the aggregate."
The word "counties" is plural and obviously cannot apply to
Senatorial District 2 as there is only *one* remaining county.
The Section *in its entirety* applies literally only to Senatorial
Districts 15 (Cecil, Kent, Queen Anne's, Caroline and Talbot
counties) and 16 (Dorchester, Wicomico, Worcester and
Somerset counties) both of which have two senators and have
more than two counties in them so that there are *"remaining
counties"* to which the exception could apply. Under these cir-
cumstances it should be said that the language of the section is
at least ambiguous in regard to whether it was the legislative
intent that the section should apply to Senatorial District 2.

The purpose of all construction of statutes is to determine
what the legislative intent was. *State Department of Assess-
ments and Taxation v. Ellicott-Brandt, Inc.,* 237 Md. 328, 338,
206 A. 2d 131, 135 (1965) ; *Casey Development Corp. v. Mont-
gomery County,* 212 Md. 138, 147, 129 A. 2d 63, 68 (1957).
If the language is clear and unambiguous, the ordinary mean-
ing of that language discloses the legislative intent. *Board of
Supervisors of Elections of Baltimore City v. Weiss,* 217 Md.
133, 136, 141 A. 2d 734, 736 (1958). But, if—as in this case,
in my opinion—the language is not clear and unambiguous, the
Court should then apply the usual maxims of construction to
ascertain what the legislative intent was.

The first rule of statutory construction to be considered is
that the general purpose of the legislation as a whole must be
ascertained and if susceptible to more than one construction,
the particular language being construed should be given a con-
struction which will effectuate or carry out the purpose or ob-
ject of the legislation. *Department of Tidewater Fisheries v.
Sollers,* 201 Md. 603, 95 A. 2d 306 (1953). The general pur-
pose of Senate Bill 5 as a whole was to seek to comply with the
requirements of the arithmetical equal population principle enun-
ciated by the Supreme Court of the United States in *Reynolds
v. Simms,* 377 U. S. 533, 84 S. Ct. 1362, 12 L. Ed. 2d 506
(1964) and other cases following the new constitutional re-
quirement laid upon the States as a result of the decision of
a majority of the Supreme Court in *Baker v. Carr,* 369 U. S.
186, 82 S. Ct. 691, 7 L. Ed. 2d 663 (1962), but at the same

430

time to seek to preserve, as far as might be constitutionally permissible under the new constitutional doctrine, representation in the Senate of Maryland for counties having smaller populations than the more populous counties. The legislative intent clearly was *to insure that the more populous counties were not favored or given a legislative advantage* greater than that required by the new constitutional doctrine. If Section 42E (A-2) is construed to apply to Senatorial District 2, it accomplishes a result entirely contrary to the main purpose or object of the legislation and, in effect, guarantees to Frederick County, allegedly the more populous county in the two county Senatorial District, a nominee for senator regardless of how many votes are cast for that one candidate. In short, to construe the language as making the section applicable to Senatorial District 2, directly frustrates and defeats the purpose and overall object of the legislation. It is a construction which should not and, in my opinion, need not be made. Section 42E (A-2) should be construed by us as not applicable to Senatorial District 2.

We have applied the above discussed principle of statutory construction when the letter of the statute seems to be contrary to the statutory purpose or spirit as derived from the statute as a whole, and have held that in that situation the spirit or intention of the law prevails over the letter of the statute. See *Baltimore Transit Employees' Credit Union v. Thorne,* 214 Md. 200, 134 A. 2d 84 (1957). In the case at bar, the language of the very sections being construed is, to my mind, ambiguous so that the application of this principle of construction is easily applied.

We are led by these two maxims of construction to the third applicable principle of construction which is that if one construction leads to a reasonable, just and intelligent result and the other construction would lead to an unjust, evil, offensive or absurd result, the courts will prefer the former construction to the latter construction, as it can hardly be assumed that the General Assembly intended an unjust, self-contradicting and absurd result from the legislation. See *Read Drug & Chemical Co. v. Claypoole,* 165 Md. 250, 166 Atl. 742 (1933) and *Kolb v. Burkhardt,* 148 Md. 539, 129 Atl. 670 (1925). The result of

construing Section 42E (A-2) as applicable to Senatorial District 2 does indeed produce an unjust, self-contradictory and absurd result. In my opinion, this result was never intended by the General Assembly and the language of the section should be construed as not applicable to Senatorial District 2.

It is indicated in the majority opinion that the word "counties" includes the singular by virtue of the provisions of Code (1957), Article I, Section 8 that "The singular always includes the plural and *vice versa, except where such construction would be unreasonable.*" (Emphasis supplied). It is clear to me that to construe the word "counties" as including the singular in Section 42E (A-2) is indeed unreasonable and the exception in Article I, Section 8 applies.

If we construed the language of the section as not being applicable to Senatorial District 2, we would, of course, not reach the constitutional issues and would not find it necessary to declare the section unconstitutional. As I see it, this would be the better policy and would be entirely consistent with our prior decisions.

I am authorized to state that Judge Horney concurs in the views here expressed.